

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### JASPER DIVISION

| | |
|---|---|
| **KATHERINE GARRARD,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 6:13-CV-1846-VEH** |
| | ) |
| **CAROLYN COLVIN,** | ) |
| **ACTING COMMISSIONER,** | ) |
| **SOCIAL SECURITY** | ) |
| **ADMINISTRATION,** | ) |
| | ) |
| **Defendant.** | ) |

---

## MEMORANDUM OPINION

## I.   INTRODUCTION

Plaintiff Katherine Garrard ("Garrard") brings this action under 42 U.S.C. § 405(g), Section 205(g) of the Social Security Act. She seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner"), who denied her application for disability, Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[1] Garrard timely pursued and exhausted her administrative remedies available before the Commissioner. The

---

[1] In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

case is thus ripe for review under 42 U.S.C. § 405(g).[2] The court has carefully considered the record and, for the reasons which follow, finds that the decision of the Commissioner is due to be **AFFIRMED**.

## II.   FACTUAL AND PROCEDURAL HISTORY

Garrard was fifty-three years old on her amended alleged onset date and fifty-four years old when the ALJ issued his decision. (Tr. 122). She has a high school education, at least two years of college, and past relevant work as a customer service technician, warehouse worker, food service manager, truck driver, waitress, baker, and secretary. (Tr. 65-66, 628). She claims disability due to bipolar disorder, depression, anxiety, panic disorder, post-traumatic stress disorder ("PTSD"), a vaginal hernia problem, MRSA,[3] leg and knee pain, narcolepsy, carpal tunnel syndrome, and breathing difficulty. (Tr. 51, 59).

Garrard filed protective applications for a period of disability, Disability Insurance Benefits, and Supplemental Security Income on June 9, 2010. (Tr. 23, 1122-32). Garrard alleged disability beginning February 27, 2010, but later amended her onset date to July 1, 2011. (Tr. 23, 51, 122, 124). Her applications were denied initially and on reconsideration. (Tr. 23, 76-82). She requested a hearing before an

---

[2] 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

[3] Methicillin-resistant staphylococcus aureus, a bacterial infection.

ALJ, which was held on March 8, 2012. (Tr. 23, 47-70, 86-87). The ALJ issued an unfavorable decision on April 27, 2012. (Tr. 23-32). The Appeals Council denied Garrard's request for review on August 6, 2013 (Tr. 1-6).

Garrard filed a Complaint with this court on October 7, 2013, seeking review of the Commissioner's determination. (Doc. 1). The Commissioner answered on February 3, 2014. (Doc. 9). Garrard filed a supporting brief (doc. 12) on April 28, 2014, and the Commissioner responded with her own (doc. 13) on June 4, 2014.

### III.   <u>STANDARD OF REVIEW</u>

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id*.

This court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no

presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## IV.    STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder. The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant

4

is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in

sequence:

> (1)    whether the claimant is currently employed;
> (2)    whether the claimant has a severe impairment;
> (3)    whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
> (4)    whether the claimant can perform his or her past work; and
> (5)    whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable

C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561,

562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir.

1986). The sequential analysis goes as follows:

> Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).

The Commissioner must further show that such work exists in the national economy

in significant numbers. *Id*.

## V.    **ALJ FINDINGS**

After consideration of the entire record, the ALJ made the following findings:

> 1.    Garrard had not engaged in substantial gainful activity since February 29, 2010, the [initially] alleged onset date.

5

2.      She had the following severe impairments: a history of asthma and posttraumatic stress disorder with associated depression and anxiety.

3.      She did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

4.      She had the residual functional capacity to perform medium work. She should never climb ladders, ropes, or scaffolds; she should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc.; she should avoid all exposure to hazardous machinery and unprotected heights; she is capable of understanding and remembering simple but not detailed instructions over an eight-hour workday with routine breaks; and she can tolerate occasional contact with the public, coworkers, and supervisors.

5.      She is capable of performing past relevant work as a warehouse worker, as this work does not require the performance of work-related activities precluded by the claimant's RFC.

6.      In the alternative, considering her age, education, work experience, and RFC, there are other jobs that exist in significant numbers in the national economy that she also can perform.

7.      Garrard has not been under a disability, as defined in the Social Security Act, from February 27, 2010, through the date of the decision.

(Tr. 25-31).

## VI.  <u>ANALYSIS</u>

The court may only reverse a finding of the Commissioner if it is not supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672

F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[4] However, the court "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Garrard urges this court to reverse the Commissioner's decision to deny her benefits on two grounds. She contends that the evidence showed that her condition met the Commissioner's listed impairment of affective disorder. She also argues that the ALJ failed to give proper weight to the primary treating physicians' medical records and opinions.[5] These arguments will be treated in turn.

### A. The ALJ Committed No Reversible Errors In His Finding That Garrard Did Not Meet A Listed Impairment

#### 1. There Were No Errors In The ALJ's Finding That The Paragraph B Criteria Were Not Met

Garrard argues that the ALJ erroneously failed to find that she had presented evidence to meet the criteria for Listing 12.04- Affective Disorder. She contends that she has presented evidence sufficient to satisfy Paragraphs A, B, and C of Listing 12.04, qualifying her as disabled. (Doc. 12 at 22-25).

---

[4]*Strickland* is binding precedent in this Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981).

[5] The Plaintiff's Brief gives separate headings for the issues of the primary treating physician's medical records and the primary treating physician's opinion. (Doc. 12 at 1, 19). However, there is only one body of argument given, and so the court will discuss both issues in this section.

In the third step of the sequential analysis, the claimant's impairments are compared to a list of impairments that are considered severe enough to preclude an adult from performing any gainful work. *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). The listings thus are more restrictive than the statutory standard, in that they do not take age, education, or work experience into account, and they recognize only impairments that would prevent one from performing <u>any</u> gainful work (rather than "substantial gainful activity"). *Id.* If an impairment meets or equals one of the listings, the claimant qualifies for benefits without any further inquiry. 20 C.F.R. §§ 416.920(d), 404.1520(d).

Listing 12.04 covers affective disorders, which are defined as disorders "[c]haracterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome." 20 C.F.R. § Pt. 404, Subpt. P, App. 1. A claimant can show the required level of severity by satisfying <u>either</u> Paragraphs A and B <u>or</u> Paragraph C alone. *Id.* Paragraphs A and B state:

> A. Medically documented persistence, either continuous or intermittent, of one of the following:
>
> > 1. Depressive syndrome characterized by at least four of the following:
> >
> > > a. Anhedonia or pervasive loss of interest in almost all activities;
> > > b. Appetite disturbance with change in weight;
> > > c. Sleep disturbance;
> > > d. Psychomotor agitation or retardation;
> > > e. Decreased energy;

f. Feelings of guilt or worthlessness;
g. Difficulty concentrating or thinking;
h. Thoughts of suicide; or
i. Hallucinations, delusions, or paranoid thinking; or

2. Manic syndrome characterized by at least three of the following:

a. Hyperactivity;
b. Pressure of speech;
c. Flight of ideas;
d. Inflated self-esteem;
e. Decreased need for sleep;
f. Easy distractibility;
g. Involvement in activities that have a high probability of painful consequences which are not recognized; or
h. Hallucinations, delusions or paranoid thinking; or

3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);

AND

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living;
2. Marked difficulties in maintaining social functioning;
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration.

*Id.*

The ALJ found that Garrard's mental impairment was not severe enough to meet the criteria of Paragraph B. (Tr. 26). This conclusion follows from his findings that she had: mild restriction in mental functioning; mild difficulties in social

functioning; moderate difficulties with regard to concentration, persistence or pace; and no episodes of decompensation of extended duration. (Tr. 27). The court does not find any errors in these findings.

Garrard argues that she given evidence to satisfy Paragraphs A and B. (Doc. 12 at 24-25). Regarding Paragraph B, her brief simply makes the conclusory allegation, "There are marked restrictions of activities of daily living, maintaining of social functioning, maintaining concentration and episodes of decompressions[6] [*sic*] as evidenced in the statement of facts." (Doc. 12 at 25).[7] The Regulations define a "marked" restriction as "more than moderate but less than extreme," and state that "[a] marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with your ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00C.

The record does not support Garrard's argument. As explained in the following section (VI.A.2), there is no evidence of <u>any</u> episodes of decompensation. There is substantial evidence that her mental and social functioning did <u>not</u> have marked restrictions. In her function report, Garrard said that she regularly prepares simple

---

[6] The court assumes her to have meant decompensation, not "decompressions."

[7] This one-sentence conclusory statement is insufficient to put the court on notice of her factual assertions. Garrard's "statement of facts" is nineteen pages long. (Doc. 12 at 1-19).

meals, does light chores around the house, drives a car, shops at Wal-Mart, handles all of her own personal care, and helps manages her finances (handling a saving account, paying bills, etc.). (Tr. 190-192). She also reported regularly attending church and high school football games (Tr. 193), and, as of November, 2011, she had been attending college classes. (Tr. 677). She reported that she felt accepted and made friends in her classes. (Tr. 677). She has more problems in maintaining concentration, persistence, and pace, but there is no evidence to indicate that they rise to the level of marked, rather than, as the ALJ found, moderate restrictions. Even if the court were to find that her problems in maintaining concentration, persistence, and pace rose to the level of marked restrictions, Paragraph B requires the presence of two results (of the four listed); therefore, this argument would still fail.

Since there is substantial evidence for the ALJ's findings that the Paragraph B criteria were not met, the ALJ committed no errors in these findings.

### 2.  There Were No Errors In The ALJ's Finding That The Paragraph C Criteria Were Not Met

The ALJ also found that Garrard did not meet the Paragraph C criteria. (Tr. 27). These criteria are:

C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

11

1.  Repeated episodes of decompensation, each of extended duration;

2.  A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3.  Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. § Pt. 404, Subpt. P, App. 1.

Garrard argues that she meets the requirements of Part 1 of Paragraph C, which requires repeated episodes of decompensation, each of extended duration. (Doc. 12 at 23). As evidence, she points to her "documented history of hospitalizations," her doctors' diagnoses of bipolar disorder and depression, and treatment for bipolar disorder, anxiety and depression from 2010 to 2012. (*Id.* at 23-24). However, Garrard's cited evidence is insufficient to meet the Paragraph C criteria. "Episodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." *Id.* at 12.00C(4). "Repeated episodes of decompensation, each of extended duration . . . means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." *Id*.

Substantial evidence supports the ALJ's finding that there were no episodes of

decompensation since July 1, 2011, Garrard's alleged onset date of disability. There are no records of "exacerbations or temporary increases in symptoms." Instead, her treatment records actually tend to suggest that her mental health has been improving since her alleged onset date. On November 8, 2011, her therapist reported that she continued to have complaints about her husband's lack of support, but that she showed slight improvement. (Tr. 677). Significantly, although the therapist's Progress Note form indicates that the therapist should "check all that apply," her therapist did not check the box to indicate that Garrard was "at risk for hospitalization/ decompensation." (*Id.*). A treatment record from January 11, 2012, reports that Garrard had made slight improvement, and a February 9, 2012, record states that Garrard was making progress "with direct assistance." (Tr. 672, 674).

Therefore, there is substantial evidence for the ALJ's findings that Garrard did not meet the Listing for affective disorder under Paragraph C.

## B.    The ALJ Committed No Errors In His Use Of Records And Opinions From Primary Treating Physicians In His RFC Findings

Garrard argues that the ALJ erred by failing to give proper weight to medical opinions and records from her primary treating physicians in his findings on her RFC.[8] The ALJ did not discuss any opinions from treating physicians, and Garrard's brief

---

[8] The court notes that almost all of the statement of law in this section — three full paragraphs — is lifted from a Sixth Circuit opinion (*Richardson v. Heckler*, 750 F.2d 506, 509-10 (6th Cir. 1984)) without clear attribution, e.g. quotation marks.

13

does not point to any opinions she thinks should have been given weight by the ALJ. The court's review of the record found nothing from a primary treating physician that can be construed as an <u>opinion</u> within the meaning of the Social Security Regulations, which define "medical opinions" as "statements . . . that reflect <u>judgments</u> about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527 (emphasis added).

However, there are medical <u>records</u> from Garrard's treating physicians. Garrard argues that these records, which cover her treatment for bipolar disorder, depression, and related mental health issues,  establish that she was unable to work. (Doc. 12 at 20-22). Garrard focuses on General Assessment of Functioning ("GAF") scores given to her by her physicians. She refers to records from a substance abuse treatment program, which state that she had a GAF of 65 upon completion of the program on July 25, 2007, and a GAF of 40 during the prior year. (Tr. 736).[9] On August 3, 2007, Oakland Family Services rated her GAF as 47. (Tr. 562). On June 9, 2010, Northwest most recent GAF score in the record. Although these GAF scores were assigned before July 1, 2011, her alleged onset date of disability, Garrard argues that, because

---

[9] These records were not submitted to the ALJ, but they would not have strengthened Garrard's case. They indicate that her GAF improved dramatically after being treated for substance abuse, suggesting that her previous GAF of 40 was heavily influenced by the substance abuse.

she continued to be treated for bipolar disorder, anxiety and depression, there is a presumption that her "severe condition" continued. (Doc. 12 at 21-22). She then argues, furthermore, that there is no evidence that her condition or GAF scores have changed. (*Id.*).

"[O]nce evidence has been presented which supports a finding that a given condition exists it is presumed in absence of proof to the contrary that the condition has remained unchanged." *Simpson v. Schweiker*, 691 F.2d 966, 969 (11th Cir. 1982), *superseded by statute on other grounds, as stated in Hand v. Heckler*, 761 F.2d 1545, 1547 (11th Cir.). According to this rule, Garrard must establish that, before her alleged onset date, she had a condition that now (either singly or in combination with other conditions) would prevent her from working. Then, unless there is evidence that the condition has changed, the court will presume that it has continued into the period of disability.

Courts in this circuit have noted that a GAF score "is not an assessment of a claimant's ability to work, but a global reference scale to aid in the treatment of an ongoing condition." *Davis v. Astrue*, No. 6:11-CV-2542-RDP, 2012 WL 4339562, at *7 (N.D. Ala. Sept. 17, 2012) (citing *Anderson v. Astrue*, No. 2:08CV917–CSC, 2010 WL 1052845, at *7 n. 5 (M.D.Ala. Mar. 23, 2010)). In an unpublished opinion, the Eleventh Circuit noted that "the Commissioner has declined to endorse the GAF scale

15

for 'use in the Social Security and SSI disability programs.'" *Wind v. Barnhart*, No. 04–16371, 2005 WL 1317040, at *6 n. 5 (11th Cir. June 2, 2005), *see also* 65 Fed.Reg. 50746, 50764–65 (Aug. 21, 2000). Thus, although GAF scores can be considered by an ALJ, the mere fact that the claimant had low GAF scores in the past does not necessitate the conclusion that she was disabled at that time. The ALJ in this case was not in error for declining to address the scores in his findings.

Furthermore, Garrard could not have been legally disabled in the period corresponding to her GAF scores because she worked during that time, holding jobs for several months at a time. (Tr. 159). She was able to work despite having the same types of mental health issues (depression, anxiety, and bipolar disorder) that form the basis of her present disability claim, plus, for some of that time, substance abuse problems. (Tr. 159-167).[10] The ALJ found, correctly, that Garrard "has required less medical treatment and reported fewer complaints since the alleged onset date." (Tr. 29). Her bipolar disorder and depression, if anything, seem to be more under control since the alleged onset date than before. She was hospitalized three times for suicide attempts in 2007 and earlier, but she has not been hospitalized since her alleged onset date. (Tr. 53). Notes from her three most recent therapy sessions (all postdating her

---

[10] Furthermore, her most recent job, as a customer service representative at Sitel, ended because of the company's closure, not because of her conditions. (Tr. 628).

alleged onset date) report that she was making "progress" and "improvement." (Tr. 672, 674, 677).

Therefore, there is substantial evidence to support the ALJ's findings on Garrard's RFC, and her ability to perform past relevant work. (Tr. 27-30).[11]

## VII. <u>CONCLUSION</u>

For the foregoing reasons, the decision of the Commissioner is due to be, and hereby is, **AFFIRMED**.  A separate final judgment will be entered.

**DONE** and **ORDERED** this the 9th day of December, 2014.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

---

[11] In her brief, Garrard has referred to evidence that was first submitted to the Appeals Council; it was not part of the record before the ALJ. (Tr. 686-814) She has not argued that the Appeals Council was in error for declining to review the ALJ's ruling. Nonetheless, the court has reviewed this evidence. None of it is new, material, and chronologically relevant, which would have required the Council to review the ALJ's decision. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007) (citing 20 C.F.R. § 404.900(b)). Most of the evidence predates the alleged onset date, making it chronologically irrelevant. Of the remaining evidence, only a few records relate to her mental health problems, and these do not reveal any greater restrictions on her functioning than were found by the ALJ, making them immaterial.